## C. GOTTSCHALL et al., Appellants, *v.* G. MELSING et al., Respondents.

A miner appropriating a piece of the public domain for mining purposes has a right to the exclusive possession of the ground so taken up.

A miner cannot by mere notice take up a piece of mining ground and hold it for five years without work or occupation ; especially, when there is not even an intention to work it, except on the happening of a very uncertain event.

Under some circumstances lapse of time is a good defense, although the Statute of Limitations is not specially pleaded.

Appealed from the District Court of the First Judicial District, Hon. R. S. Mesick presiding.

*Pitzer & Keyser*, for Appellants.

The Court below erred in holding that the right of a miner is merely equivalent to a license to extract the precious metals from the earth.  They have a right to the possession of the soil. (*Watts* v. *White*, 13 Cal. 324 ; *Merrill* v. *Judd*, 14 Cal. 64 ; *Hughes* v. *Develin*, 23 Cal. 501 ; *Gore* v. *McBrayer*, 18 Cal. 582 ; *Richardson* v. *McNulty*, 24 Cal. 345.

The Court erred in holding that the same piece of land at the same time may be appropriated by different persons for different uses.

The Court erred in holding that ejectment would not lie for a mining right, or in other words, for a mining claim. (*Table Moun-*

13

*tain Tunnel Company* v. *Stranahan*, 20 Cal. 209 ; *St. John* v. *Kidd*, 26 Cal. 266.)

Proof of possession is sufficient to maintain this action ; and slighter circumstances will establish possession in actions for mines than in those for agricultural lands. (See *Atwood* v. *Frico*, 17 Cal. 43 ; and *Table Mountain Tunnel Company* v. *Stranahan*, 20 Cal. 209.)

If a party locates according to the mining laws of his district, and neither abandons nor forfeits by those laws, this is sufficient to recover. (*Gore* v. *McBrayer*, 18 Cal. 582 ; *St. John* v. *Kidd*, 26 Cal. 271.)

*Hillyer & Whitman*, for Respondents.

The allegations in the complaint were not supported by the proof. The complaint alleges an unqualified ownership or right of possession, the proof at most only shows a right to mine or dig for precious metals in the ground sued for.

The same ground may at the same time be occupied for different purposes by different parties. Respondents cited in the course of their argument on this point the following cases : *Tartar* v. *Spring Creek Water Company*, 5 Cal. 395 ; *Burdge* v. *Underwood*, 6 Cal. 46 ; *McClintock* v. *Bryden*, 5 Cal. 97.)

Opinion by BEATTY, J., LEWIS, C. J., concurring specially in the judgment.

This was an action in the nature of an action of ejectment, brought by the plaintiffs in the month of October, 1865, to recover possession of a considerable tract of land in the center of the town of Gold Hill.

The property sued for contains a large number of houses, mills, &c., of great value in that town. The plaintiffs, to sustain their cause, proved that they and their grantors (two of the present plaintiffs being original locators and a third a grantee of one of the original locators) located a mining claim in 1859. That claim as located was 900 by 400 feet, and included the property in controversy. The location was made by putting up a notice of the claim and sticking up a post at each corner of the parallelogram. Subsequently, it was ascertained this location interfered with a mining

location of older date.    The boundaries were then so contracted as to leave out the portion interfering with the older location.

The plaintiffs then went to work and prospected the claim, working on it at intervals from September, '59, to December, '60, both inclusive.

The result of this prospecting was to show the ground moderately rich in gold, so rich that it would have been a valuable mining location if water had been obtainable.    But in the absence of water, which the country does not afford in its present state, the ground was worthless for mining purposes.    The claim, therefore, was not worked, and the parties ceased to occupy or use it in any way, but avowed their intention of holding on to it, to be worked at a future day in the event water was brought by artificial means to the district, and to be had in sufficient quantities for mining purposes. At the time this location was made there were one or two cabins on it occupied by others than the locators.    Since its location, there has never been water enough to work the claim except at one time, which was during the winter of 1861, which was a remarkably wet winter.    Then, as the water only lasted a short time, it was not available for mining purposes.    Since the location of this piece of ground for mining purposes the main street of Gold Hill has been run through it, and it is compactly built up with houses for its whole length.

Whilst this ground was being built up, the plaintiffs occasionally gave notice to those who were improving that they claimed it for mining ground, and expected to occupy it and mine it if ever water was brought in.

Upon the plaintiffs resting, the defendants asked for a nonsuit. The Court granted it, and plaintiffs appeal.

Whilst we cannot fully concur with the Judge who wrote an opinion sustaining the nonsuit in all the views which he expresses, we are perfectly satisfied with the result at which he arrived.    We are satisfied the nonsuit should have been granted.    The Judge who tried the cause in the Court below seems to think the plaintiffs showed a good and subsisting right to mine the ground in controversy in case water should at any future time be brought into the district. But he holds that the right to mine in the ground and extract the precious metals therefrom gives only a qualified right of possession

to the miner : that others have a right to occupy ground which has been appropriated for mining purposes, so long as such occupation does not interfere with the free use of the ground for mining operations : that as this ground cannot at present be used for mining purposes, because of the want of water, the occupation of it by others is not an infringement of the rights of the miners, and therefore they have *at present* no right of action.

We cannot see that the miner stands in any different relation to the Government from that occupied by others holding possession of any part of the public domain.

All persons settling on the public domain are mere licensees or tenants at will of the Government, (except in those cases where a party is protected by some pre-emption or homestead law) and we can see no reason why one who appropriates a portion of the public domain for mining purposes is less entitled to the sole and exclusive possession of the ground appropriated than one who appropriates a piece of the same public domain for a garden or a building lot. Indeed, law and custom have given the miner in some respects the advantage over all other appropriators. A mere notice of appropriation or intention to appropriate a certain piece of ground for mining purposes when the proper season arrives, has generally been held to be a sufficient appropriation by a miner, whilst one wishing to appropriate for other purposes can only hold by an actual appropriation and occupation. We are of the opinion the plaintiffs' proof in this case shows they have no right whatever in the premises sued for. Whilst the law facilitates the taking up and holding of mining claims until the proper season of the year arrives for working them, it discourages the holding on to such claims without working them for long and indefinite periods.

The limitation of actions for mining claims is two years. For other actions for the recovery of real estate it is five years. The whole policy of the law is against appropriating the public mineral lands, and holding on to them without work. We do not think a party can go on to the public lands and lay a claim to a portion thereof for mining purposes, prospect the same and then leave it for an indefinite time and still retain his rights therein. Doubtless a miner may take up a claim and hold it until the proper season of the year arrives for working it, without forfeiting his rights—and if

a season of unusual character (a very dry one, for instance) should intervene, he might wait for a second season. But we do not think a party can, by mere notice, take up a mining claim and hold it for five years without work or occupation, and without any intention to ever work it again, except upon the happening of a very uncertain event, to wit: the bringing of water by artificial means to the district.

If there had been some work for the introduction of water into the district progressing at the time the claim was located, or at the time the locators ceased work thereon, there might have been some reason for suspending work on the mining claim, and awaiting the advent of water. But when no such work was in progress, and no certainty that any such ever would be commenced, it would be altogether unreasonable to withhold the use of the land from other profitable employment because of a mere possibility that the mining locator might, at some future and distant day, be able to use it for mining purposes.

Again, if there were no other objections to plaintiffs' claim, it is clearly barred by the Statute of Limitations. It may be objected that the Statute of Limitations was not pleaded, and is therefore not available to the defendants. The more modern rulings of Courts seem to favor the Statute of Limitations, and allow of its becoming a defense without being specially pleaded. It has been held in some cases that a general demurrer will be sustained to a complaint which shows on its face that a claim sued for is barred by the Statute of Limitations. In this case, whilst plaintiffs' evidence shows they rely exclusively on a mining right claim which is barred by a limitation of two years, the complaint is silent as to the foundation of the right sought to be enforced, so that the defendants could not know, from anything contained in the complaint, that a limitation of less than five years applied to this action. Consequently, it was not the fault of the defendants' pleadings that the Statute was not pleaded.

Under such circumstances the defendants were evidently entitled to either one of two things. They were entitled to all the benefits of the Statute of Limitations, without a special plea of the Statute, or upon the close of the plaintiffs' testimony they were entitled to amend their answer so as to set up that defense. Neither party should be allowed to obtain an unfair advantage by the concealment

and suppression of facts.   The defendants were entitled to every indulgence from the Court in making good their defense, because the plaintiffs attempted to evade the Law of Limitations by concealing the foundation of their claim, and only developing the real nature of the action when they introduced their testimony; and because the claim was a stale one and not founded upon any just or equitable right, but a speculative attempt to deprive innocent parties of their labor and capital invested, without any just compensation.

The judgment of the Court below is affirmed.