## J. B. LOBDELL, Appellant, *v.* WARREN HALL *et als.* Respondents.

The rule that a judgment must be reversed where instructions on a material point are contradictory, is not an absolute and unqualified rule. If one party asks for an instruction, which is given by the Court, laying down a rule of law in language too broad and unqualified, and the other side then asks an instruction, which is also given, qualifying and limiting the former instruction, and to some extent contradicting it; if the second instruction contains only sound law, the conflict between the two is not an error of which the party can complain who obtained the instruction which was too broad and unqualified.

An Indian who has appropriated water on the Public Lands of the United States may maintain an action for the diversion of that water, as well as any other person.—Per BEATTY, C. J.

Any person getting possession of any dam or ditch for the diversion of water from an Indian, although there be no deed of conveyance, has the same right to maintain and enjoy such dam and ditch as the Indian had.—Per BEATTY, C. J.

Instructions given or refused by the lower Court will not be inquired into on appeal, unless the record shows that the giving or refusal to give them was excepted to at the time.—Per JOHNSON, J.

Instructions given to a jury without objection are presumed to be with the consent of the parties, and such consent is a waiver of any right thereafter to question their correctness in that particular case.—Per JOHNSON, J.

LEWIS, J., dissenting.—No person in this State can acquire title or right to any public land from an Indian.

A legal interest in land can only be conveyed in this State by means of a deed of conveyance in writing. The right to the enjoyment and repair of a dam, and to have the water so diverted flow through certain land, is such an interest in land as can only be conveyed by deed in writing.

ON PETITION FOR REHEARING.—If there is an entire failure to make any note of an exception, taken either by the Judge or his Clerk, and the term of Court expires at which the case was tried and judgment rendered, the Judge would afterwards have no authority to settle, or make a bill of exceptions showing the fact. He might settle the statement even after the term, if made within the time prescribed by law. The general rule is, that after judgment and the adjournment of the term, the Court loses jurisdiction of the case for most purposes.—Per BEATTY, C. J.

Under our practice, if an exception is actually taken at the trial, but not drawn up in form for the Judge's signature, and no note of it is made, either by the Judge or the Clerk, still the party dissatisfied with the judgment has a right to make his statement on motion for new trial, or on appeal, and in either of such statements he may show any exception that he really took during the trial, although there be no note of the same. For the purpose of settling such statements, the Court still retains jurisdiction of the case until the time prescribed by law has expired. After the statement is once made and settled, the

Court below loses jurisdiction of the case, and no addition can be made to such statement.—Per BEATTY, C. J.

In the matter of amendment of Court records, the question should be treated as one of legal discretion, rather than of jurisdiction solely, that whilst the power is not unlimited, neither is it absolutely restricted to the particular term, but may be exercised within the bounds of a legal discretion, whereof the subject matter of the amendment and the circumstances under which it is allowed constitute the only test.—Per JOHNSON, J.

APPEAL from the District Court of the Second Judicial District.

*R. M. Clark,* for Appellant, made the following points:

If from any cause, at the time of Lobdell's appropriation, the waters of Desert Creek were passing down the natural channel to Lobdell's, the defendants could not, after Lobdell's appropriation, direct the water or any part of it to his damage, or to the diminution of the quantity claimed by him. (*Lobdell* v. *Hall & Simpson,* 2 Nev.)

The instructions given at the instance of the plaintiff, and those given at the instance of the defendant, are inconsistent, and contradictory, and irreconcilable. A new trial should be granted for this reason. (See Instruction 7 for plaintiff, and Instructions 6, 7, 8; Hilliard on New Trials, 214, 215; *Ferguson* v. *Fox,* 1 Met. [Ky.] 83; *Clarks* v. *McElroy,* 11 Cal. 154.)

The Court erred in giving Instruction No. 4 at the instance of defendants.

1st. The instruction is erroneous in assuming that *location* of *land* is an *appropriation of water* passing through it.

2d. It is erroneous in assuming the location of defendants to have been upon Desert Creek, the waters of which were in controversy.

3d. It is erroneous in ignoring any appropriation by the plaintiff, and in assuming that at the time of plaintiff's appropriation, and up to the time of the defendant's appropriation, no change had taken place in the dam or ditch.

*Thomas H. Williams,* also for Appellant.

*Aldrich & DeLong,* for Respondents, argued:

Where there is a disputed question of fact, and evidence has

been given on both sides of the question, courts will not disturb the findings of a jury. (6 Barb. 141–3–4; 2 Cal. 423; 20 Id. 83; 24 Cal. 338.)

A new trial will not be granted where there is a conflict in the testimony; and where there is a conflict in the testimony of the party applying for a new trial, it is the more fatal. (*Cook* v. *Forsyth*, 30 Cal. 662; 26 Id. 275.)

When the testimony before a jury is contradictory, and the character and credit of witnesses are in question, a new trial will not be granted, on the ground that the verdict is against the weight of evidence. (*Winchell* v. *Latham*, 6 Cowan, 681; *Flaming* v. *Hollenbeck*, 7 Barbour, 275; *Adsit* v. *Wilton & Chamberlain*, 7 Howard Pr. 64; 5 Sanford, 180; 5 Minn. 339, 373; 9 Iowa [1 With.] 1; 6 Minn. 160; 7 Id. 114, 511; 27 Ill. 189; Id. 20.)

A verdict should not be set aside merely because the Court would have come to a different conclusion from that of the jury on the force and weight of the testimony. (*Mackey* v. *N. Y. Central R. R. Co.*, 27 Barbour, 529.)

When there is some evidence to support the verdict, and a motion for a new trial is overruled, the Supreme Court will not interfere. (*Baxter* v. *McKinlay*, 16 Cal. 77.)

Upon the second point—that the Court erred in giving the instructions that it did—we reply that, inasmuch as the Court gave all of the instructions asked for by the appellant, the error, if any error was committed, must be found in those given at respondent's instance. Those were carefully drawn from the books, embodying as we think the settled doctrines relative to water rights, as laid down by the Supreme Court of California in various cases, and by this Court in this case when formerly decided here. These general authorities we refer to as follows: " Plaintiff takes land on a stream, from which already a part of the water has been diverted by a ditch and dam. Subsequently defendant takes up the land on which the ditch and dam are situated. The plaintiff has no right to move the dam." This is the language of the Court in this case. (2 Nev. 274.)

Certainly it is equally true that the plaintiff has no more right to move or obstruct the ditch than the dam. And that the ditch

remains of the same capacity, and unrepaired, is a fact that the jury found, and this Court will not review that finding.

The rule is this: If there was a ditch and dam existing then, (which is admitted) or if nature had formed a channel to the stream so that when Lobdell located, only a portion of the waters of that stream customarily flowed in the channel he claimed, his rights became fixed, and limited to such an amount as customarily flowed when he claimed it, and all right to remove the dam, obstruct the ditch, or interrupt any other channel, became lost by his failure to act until the rights of others intervened.

In support of the principles contained in the instructions in addition to the case cited, we refer to *McDonald* v. *Bear River*, 13 Cal. 220; Id. 33; 8 Cal. 329; 5 Id. 145; 12 Id. 28; 3 Id. 249.

And as to what is evidence of possession of a water right, see 6 Cal. 108, 558; 7 Id. 263; 12 Id. 49.

The error of an instruction must clearly appear. (Hilliard on New Trials, p. 17.)

Erroneous instructions or rulings of a Court, if not productive of harm, are no ground for a new trial. (Id. pp. 33, 35, 37, 210–219.)

A mistake in a Judge's charge is not always ground for a new trial. (*Depuyster* v. *Columbia Ins. Co.*, 2 Caine's, 85; *Alston* v. *Jones*, 17 Barb. 276.)

A plaintiff is not entitled to introduce evidence in rebuttal to the same points as those which were proven by it in making out its *prima facie* case. (25 Cal. 509; Union Water Co., 2 Crasy.)

Opinion by BEATTY, C. J., JOHNSON, J., concurring specially, LEWIS, J., dissenting.

This was an action brought to recover damages for diverting the waters of Desert Creek, and also praying for an injunction to restrain future diversion of the water.

The facts, so far as they are undisputed, are as follows:

In the summer of 1860 the plaintiff located and occupied a ranch on Desert Creek. In December of that year he commenced the digging of one ditch for irrigating purposes, which was finished the

following February.   Immediately after this ditch was finished he commenced the construction of a second ditch, which was finished some time in March.   These two ditches were of capacity to carry about three hundred inches of water, miners' measure, and this much water was required during irrigating season to properly irrigate plaintiff's ranch.   In March or April, 1861, defendants located and occupied a ranch on Desert Creek, several miles above that occupied by plaintiff.   The land which defendants located was irrigated, or at least had been irrigated, by means of an old ditch which had been dug by Indians many years before.   This ditch, it appears, had been used by the Indians for running fish out on the meadow-land for the purpose of catching them.   When the defendants were about to locate their ranch the Indians claimed this old ditch, and objected to the location by defendants.   Finally the defendants bought out the Indians and made their location.

At the time the defendants made their location, which was, according to what we suppose the most reliable evidence on this point, about the third of March, 1861, there was no water running through the Indian ditch and so down to their meadow-land.   Some water was running in that ditch at its head, but it all run over the banks of the ditch or through breaks in the bank near its head, and thus found its way back into the creek.   In April however the water was running freely through the Indian ditch for its entire length, and flowing down to and over defendants' meadow-land.

At this point occurs the first conflict in the evidence of plaintiff and defendants.

The plaintiff attempts to prove that after the defendants made their location, in March or April, they diverted the water from the natural channel of the creek and turned it through the old Indian ditch on to their meadow-lands.   The plaintiff does not attempt to establish this fact by direct or positive proof, but by circumstantial evidence, such as the appearance of the banks of the old Indian ditch showing recent repairs, etc., and by the opinion of witnesses that the old Indian ditch was in such condition in March, 1861, that it could never have flowed water on to the defendants' ranch without rebuilding or repairing the banks at those points where the water had been wasting away near its head.

The defendants, on the other hand, (who were on the stand as witnesses) deny that they made or caused to be made any repairs in the old Indian ditch or dam in the spring of 1861. Their theory of the case is that the water did not flow through the entire ditch during the early part of March, because it was obstructed by snow and ice frozen in the ditch. That as soon as the ice and snow melted out of the ditch the water commenced to flow through the entire length thereof, without any interference on their part. They allege that the first repairs they made were in the summer or fall of 1861, when a man was sent up by one of the defendants to repair some breach or deficiency in the ditch. They swear they had never enlarged the capacity of their ditch or raised their dam from the time they bought the Indians out to the commencement of this suit. That the only repairs done on either to amount to anything, was to repair damages done by plaintiff after the controversy arose about the prior right to the water in the creek.

Whilst the evidence is very satisfactory that no water ran in the lower part of defendants' ditch in March, (or the early part of March) 1861, it is very clearly shown that the water had for several seasons been running at least a portion of every year through the entire length of the Indian (defendants') ditch. It was also clearly proved that it was running in the head of that ditch in March, 1861. But whether the water was caused to flow down the ditch in April, 1861, by reason of repairs made in the upper end thereof, by defendants or others in their employ, or whether it commenced flowing through the entire length of the ditch simply by reason of the melting of the snow and ice, and the great abundance of water in the month of April, it is impossible to say. The proof on this point is not satisfactory either way, and the probabilities are perhaps about balanced. If we were called on to decide this point, or the weight of testimony, it would be a difficult question to determine.

The case was submitted to a jury, and under the instructions of the Court and such evidence as we have detailed, the jury found for defendants. The plaintiff moved for a new trial in the Court below, and failing in that, appeals to this Court from the order overruling his motion. The first point made by appellant's counsel is

Lobdell *v.* Hall.

that the verdict of the jury was against law and evidence. And to support this proposition he contends that there is no question but that at the time defendants made their location the whole of the water of Desert Creek was flowing in its natural channel, and had been appropriated to the extent of three hundred inches by plaintiff, and that being so appropriated at the moment of defendants' location they had no right to divert it. Even admitting this proposition to be a correct one, still the record does not show the facts entitling plaintiff to a new trial. It is very clearly shown, as appellant contends, that at the very day the defendants (respondents) made their location the whole of the water was running in the natural channel of the creek down to appellant's ranch and ditches. But is not shown that defendants subsequently diverted it. For all that we can see in the record, a portion of the water of the creek may subsequently have flowed down defendant's ditch simply from the melting of the snows and ice. If so, the defendants are not responsible. Nor if the flow on to their ranch was only stopped by the snow and ice, would the plaintiff have been justified, after the snow and ice melted out, to have placed other obstructions in defendants' ditch to prevent the flow of water therein. As the evidence presents itself to us, this point is not well taken.

The next ground of complaint is that the Court gave to the jury contradictory instructions. On the part of the plaintiff, the Court, among other instructions, gave the following:

"If at the time of the plaintiff's location and appropriation of the water, if the appropriation by the plaintiff was prior to the location of the land and ditch by the defendants, and the ditch known as the old Indian ditch, and designated on the map as the Simpson & Hall ditch, was in existence, but was so blocked up, broken or obstructed as not to divert or permanently carry away from the main channel of the stream the waters of the stream; if in other words, by reason of any obstruction or break in the ditch, or any break in the dam, the water flowing into the mouth of the ditch found its way back to the original channel above the point where Lobdell diverted it, and afterwards the defendants, by themselves or employés, removed the obstructions or repaired the ditch, and by that means prevented the water from returning to the orig-

inal stream, thereby diminishing the quantity of water appropriated by the plaintiff, then they must find for the plaintiff."

On the part of defendants, the Court among other instructions gave the following:

" The jury are instructed that a person locating upon a stream and appropriating the water, has a right to have it flow (so far as the natural channel is concerned) in precisely the same manner as it did when he located, and no prior locator has any right to make any such change in the natural channel as will injure subsequent appropriators of the same water."

Sixth.—" The jury are instructed that the foundation of the right to water passing over public lands is first appropriation, ' first in time, first in right,' is the rule.   Hence, if you believe from the evidence that either the defendants or other persons first appropriated the waters of said stream to the extent or amount that it was being used by the defendants at the time of the commencement of this action, and that such appropriation had not been abandoned, you must return a verdict for defendants."

Seventh.—" The jury are instructed that no temporary obstruction of a portion of a dam or ditch, or any temporary obstruction of the latter, will result in any waiver or loss of right to appropriated waters.   If, therefore, you find from the evidence that the ditch and dam of defendants existed prior to plaintiff's appropriation of the waters of Desert Creek, and had been before and has been since said time customarily used in flowing water from said stream on to the land now claimed by defendants; and if you also find that the defendants have never diverted the waters of said stream by any other means but by said dam and ditch, you will find a verdict for defendants; although it may appear that at the time of plaintiff's location, by means of some temporary injury to the dam or ditch, no water at that time was flowing through the defendant's ditch."

Eighth.—" If you, the jury, believe from the testimony, that the dam and ditch of defendants, by which alone they divert the waters of Desert Creek, both existed prior and at the time of plaintiff's location as they existed at the time of defendants' location and at the time of the commencement of this action, you will find a verdict for the defendants."

The sixth, seventh and eighth instructions the appellant contends contain matter at variance with the law, as laid down in the seventh instruction given on the part of plaintiff. If these instructions conflict with each other, he contends that the case must be reversed, because contradictory instructions are calculated to mislead the jury.

The rule that a case must be reversed where instructions on a material point are contradictory is not as unqualified as appellant contends for. If one party asks for an instruction which is given by the Court, laying down a rule of law in language too broad and unqualified, and the other side then asks an instruction, which is also given, which qualifies and limits the former instruction, and in some respects contradicts it, if the second instruction contains only sound law, the conflict between the two instructions is not an error of which the party can complain who obtained the instruction which was too broad and unqualified. It might be that this was error injurious to the other side, for the jury might not understand that one instruction was a modification of the other, and might be misled by the too broad language of the first. But they could not do wrong by being governed by the modification. The error could not be complained of by the party who got the wrong instruction, or the instruction not properly qualified and guarded.

Under this rule let us examine the defendants' instructions, and see if they contain any error. The language in defendants' sixth instruction, to which exception is taken, is this: "If you believe from the evidence that either the defendants or other persons first appropriated the water   *   *   *   and that such appropriation had not been abandoned," etc. It is contended that there is no proof in the case that any other person, except uncivilized Indians, had ever appropriated this water prior to the time defendants took up their ranch. That defendants could derive no advantage from their purchase from these Indians, and therefore it was improper to insert the words " or other persons" in the instruction, because it was calculated to mislead the jury, and induce them to believe that defendants could, by means of a title derived from the Indians, carry back their claim to the water to a date long prior to the time when they themselves first took up the ranch.

That this presents a serious question in the case there is no doubt. If the defendants could derive no advantage from the acts of the Indians, then it certainly was improper to have inserted in the sixth instruction the words " or other persons." The proof did not pretend to show, or attempt to show, that others than the Indians had dug any ditch or appropriated any water before defendants took up their ranch.

At common law any person, either Christian or heathen, alien resident or non-resident, with the single exception of alien enemies, might bring suit to enforce any civil rights they might possess. It is true that aliens under the common law could not lawfully hold real estate, and transmit the same to their heirs; yet they might buy it and maintain trespass for injuries thereto, or their lessee might maintain ejectment. It has been held in the United States that an alien might maintain any personal action to enforce his rights to land by him purchased until proper steps had been taken to declare such land forfeited to the State. It has been doubted whether he could maintain a real action, though it is said he might defend himself against such action. (See *Fairforth*, devisee, v. *Hunters' Lessee*, 7 Cranch, 603, where the whole subject is fully discussed.

If then all persons, without regard to nationality, are in this country allowed to maintain any action to enforce their rights to the enjoyment of all property, personal or real, we see no reason why an Indian who has appropriated water on the public lands of the United States might not maintain an action for the diversion of that water as well as any other person. If an Indian could maintain an action for diversion of water, then he certainly would have a fixed interest in the waters so diverted, and a clear right to repair any temporary damage in his ditch or dams. If then the plaintiff located his ranch, or began the digging of his ditches, at a time when the water was all escaping from the Indian ditch through a breach therein, it would not deprive the Indians of a right to repair that ditch.

But admitting the Indians had a right to repair that ditch, it is still contended that defendants are in no manner substituted to the rights of the Indians, and for two reasons: In the first place, Con-

gress has prohibited all purchases of land from Indians; and in the second place, the fifty-fifth section of our Act in regard to Conveyances reads as follows:

" No estate or interest in lands, other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing."

Now it is contended that the appropriation of water and the right to repair the ditches, etc., in which it is carried, is so intimately connected with the use of the land through which the ditches are dug and the water conducted, that no right to use the water can be transferred without also transferring some interest in or power over the land; that this was not done by the Indians in this case, because it is not pretended they made any deed or grant, but merely a parol transfer of their claim on the water; nor if they had attempted to make such deed would it have been available in the face of Congressional Acts prohibiting sales of land by Indians. We do not deem it necessary to go into a critical examination of either the fifty-fifth section of our Act concerning Conveyances, nor of the several Congressional Acts prohibiting the sale of lands by Indians. If the Indians themselves had a right to repair the ditch, we think those who obtained the possession under them had the same right. (See *Oatman* v. *Dixon*, 13 Cal. 36.) If, when the plaintiff located his ranch, he located it with a subsisting right on the part of the Indians or any other person or persons to repair this ditch, and throw a part of the waters of Desert Creek on to the ranch now held by defendants, we do not think the right to repair the ditch was lost by the possession passing into other hands. We think the rights of plaintiff and defendants are just the same as they would have been if the Indians had repaired their ditch before transferring possession thereof to defendants. Under these views, there is nothing objectionable in this sixth instruction.

The seventh instruction is objected to because the jury are told in substance if the water flowed customarily through the Indian

ditch before and after the plaintiff's location just as it did when this suit was brought, they must find for defendants, notwithstanding some temporary break in the ditch or dam may have thrown all the water on to plaintiff's premises at the time of his location.

If the sixth instruction was right, this was also right for the same reasons. If right, it is right on the ground that the Indians or those holding possession under them had a right to repair any temporary break in the dam or ditch.

The same observations apply to instruction number eight. Instruction number four asked for by defendants certainly contains only correct legal principles, and we think very clearly expressed. Appellant also complains of an abuse of discretion on the part of the Court, in refusing him the privilege of reëxamining several witnesses in regard to the appearance of recent repairs on the old Indian ditch. If our views of the case are right, this evidence would hardly have been material. If defendants had a right to make repairs, it would have availed the plaintiff nothing to have strengthened his evidence on this head. He had already examined several of his witnesses on this point, and we do not think it was any abuse of discretion on the part of the Court to refuse to allow him to go into this question again. It is not strictly in rebuttal of the defendants' evidence.

Per JOHNSON, J.

This action was originally commenced in Esmeralda County, and upon a trial, judgment rendered for plaintiff. Defendants appealed, and judgment reversed. (2d Nevada Reports, 274.) The case was then transferred to Douglas County, and upon the second trial judgment was for the defendants, and a new trial refused by the District Court; whereupon plaintiff brings this appeal from both the order refusing such new trial and from the judgment.

The notice of motion for a new trial in the Court below states as the grounds therefor the following:

" 1st. That the verdict of the jury in said cause was contrary to the evidence, and that the evidence therein was insufficient to sustain said verdict.

" 2d. That the said jury was not drawn and selected nor impanneled according to law.

" 3d. That the Judge erred in giving instructions to the jury asked by defendants.

" 4. That the Court erred in overruling the objections taken by plaintiff's counsel upon the trial of such cause, and duly excepted to by plaintiff.

" 5. That the Court erred in sustaining the objections of defendants' counsel taken upon said trial, and duly excepted to by the plaintiff.

" 6th. That the Court erred in allowing the jury to separate and disperse after they had heard a portion of the argument of counsel, and before the same was concluded, and before the verdict."

The only difference observable in the motion itself and the notice is, that the motion did not include the last or sixth ground, and the fourth and fifth are explained as follows : " That is to say, the fourth and fifth objections are intended to cover any and all errors of law occurring at the trial and excepted to by the plaintiff." No affidavit was offered in support of the second ground, and such as were considered on the hearing of the motion can at best be regarded as falling under the sixth and seventh clauses of Section 193, Civil Practice Act, 1861, p. 346. " Sixth. Insufficiency of the evidence to justify the verdict or other decision ; or that it is against law." " Seventh. Error in law occurring at the trial, and excepted to by the party making the application." The grounds of error stated by counsel for appellant, and upon which we are asked to reverse the order refusing a new trial and the judgment, may be grouped under the following general heads : " First, the verdict of the jury is contrary to law and evidence ; second, the instruction given at the instance of the plaintiff and those given at the instance of the defendants are inconsistent, and contradictory, and irreconcilable." Other points than these, but not specified as grounds of error in the written assignments of counsel, all of which relate exclusively to the ruling of the Court below in rejecting certain evidence offered by plaintiff, claimed to be in rebuttal of defendants' testimony, were also discussed by counsel on the argument.

The most important questions, perhaps, which counsel for appellant has urged, and those upon which he seems chiefly to rely,

grow out of certain instructions of the Court, and hence it becomes necessary for us to determine whether or not these instructions can now be reviewed; for it is a rule of universal application, that instructions of a subordinate Court given or refused, will not be inquired into on appeals, unless excepted to at the trial below. (8 Johnson, 495; 1 Wendell, 418; 1 Cowen, 622; 5 Cal. 647; Id. 478; 7 Cal. 38; Id. 423; 2 Bac. Abr. 112, Bill of Exceptions, and cases there cited.)

The settled statement used on the argument of the motion in the lower Court, and embodied in the record before us, comes indorsed as a " particular history of the proceedings and all the evidence taken and submitted upon the trial." (Page 2 of Transcript.) The instructions asked by plaintiff were all given, as also were those of defendants, except the first two, which were refused. In no part of the transcript, by bill of exception, minutes of the Court, or otherwise, are any exceptions shown to have been taken by either party to the giving or receiving of any instructions. Nor in fact does the third ground assigned on motion for new trial allege that the errors in giving these instructions were " excepted to by the party making such application," as required by Sec. 194 of the Practice Act; and therefore in a measure confirms the belief that no such exceptions were taken at the trial, and were not considered on the motion for a new trial in the District Court.

Instructions given to a jury without objection are presumed to be with the consent of the parties, and such consent is a waiver of any right thereafter to question the correctness of the instruction as applied to the particular case; for, says Burnett, J., in *Letter* v. *Putney et al.* 7 Cal. 423, " a party cannot first take his chances of a verdict upon instructions given or refused without exception, and then afterwards except to the action of the Court upon a motion for a new trial."

Excluding all inquiry in respect to the instructions, in my judgment, virtually disposes of this appeal, as the further points made for appellant, to which exceptions were duly taken at the trial, I consider to be without merit. A large number of witnesses testified upon the trial, and in some respects the evidence is conflicting; wherefore, accepting the instructions of the Court below as the law

governing the case, there can be no just ground for this Court to disturb the verdict. The questions made as to the exclusion of certain evidence, the rulings of the Court thereon being excepted to by the plaintiff's counsel, are equally untenable. The proferred testimony of the witnesses Rickey, Chase, Lobdell, Smith, and Wheeler, as to the condition of the old Indian ditch, had been quite fully gone into by plaintiff in his opening evidence, and in no just sense can it be held error in the Court below in refusing to allow the same testimony to be repeated in rebuttal.

The statements of Clay in respect to repairs on the ditch were clearly inadmissible as evidence against defendants. From this view of the case, it follows that the judgment should be affirmed.

Opinion by LEWIS, J., dissenting.

It is declared by Act of Congress that " no purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian, or nation, or tribe of Indians within the bounds of the United States, shall be of any validity in law or equity, un less the same be made by treaty or convention entered into pursuant to the Constitution. And it shall be a misdemeanor in any person not employed under the authority of the United States to negotiate such treaty or convention, directly or indirectly, to treat with any such Indian, nation, or tribe of Indians, for the title or purchase or any lands by them held or claimed, punishable by fine not exceeding one thousand dollars, and imprisonment not exceeding twelve months." (Brightley's Digest, 433, Sec. 99.) From this law it would seem the defendants could acquire no title whatever from the Indian or Indians, from whom they claim.

But should this law be put out of the case entirely, and the Indians' right to convey be conceded, I should still be led to the same conclusion ; for it appears from the record that no legal conveyance was ever made by the Indian.

Section 55, Laws of 1861, p. 18, declares that " no estate or interest in lands other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law,

34

or by deed or conveyance in writing, subscribed by the party creating, granting, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing." This is substantially the Utah law which prevailed in the Territory of Nevada at the time of the transaction in question. That the right to the enjoyment of the dam and to have the water flow through the ditch in question is an interest in land, is fully supported by the following authorities: *Hawkins* v. *Shippam*, 5 Barn. & Cress, 221; 7 Dow & Ky. 783; *Crocker* v. *Cowper*, 1 Cro., Mees & Ros. 418; *Wood* v. *Leadbetter*, 13 Mees & W. 836; *Mumford* v. *Whitney*, 15 Wend. 380; *Brown* v. *Woodworth*, 5 Barb. 580; *Phillips* v. *Thompson*, 1 John. Ch. 131; *Bennett* v. *Scott*, 18 Barb. 347.

The defendants do not pretend to claim as lessees, hence, there being no deed or conveyance in writing as required by the statute, they acquired nothing from the Indian. In my judgment, therefore, the sixth instruction given at the instance of defendants, was incorrect. For these reasons I am constrained to dissent from the conclusions of the Chief Justice.

---

### PETITION FOR REHEARING.

On petition for rehearing, BEATTY, C. J., delivered the following opinion, which was specially concurred in by Mr. JUSTICE JOHNSON:

There is a petition for rehearing in this case in which two principal points are urged. The first is that the counsel for respondent, on the argument of the case, did not make or rely on the point that no exceptions were taken in the Court below to certain instructions, in the giving of which the appellant contends error was committed.

We believe no such ground was taken in the oral argument, and it certainly is not alluded to in respondents' brief.

If we could see that appellant lost any advantage by this admission of respondent, we certainly should not hesitate to grant the rehearing. But if we were to grant such rehearing, certainly at the next trial or argument of the case the respondent would raise

the point, and the result would be the same. When the petition in the case was first filed, the Court made known to counsel for respondent that if there was anything in the record showing that the charge had been excepted to at the trial in the Court below, but had been omitted by some oversight from the transcript sent to this Court, we would not hesitate to grant the rehearing. For in that case had the objection been raised on the hearing of the case in this Court, the appellant might have asked for a continuance, with leave to amend the record.

But we now learn that the *record* does not show that any exception was taken at the trial of the cause; but in lieu thereof the appellant produces the certificate of the District Judge, showing that in fact the appellant did object to the instructions given at the instance of the respondent; did except to the ruling of the Court in giving them; that the exception was *allowed,* and the clerk directed to note the exception, which however he omitted to do.

The appellant contends that under these circumstances, if a rehearing is granted, he can procure an amendment of the record in the Court below and bring up a transcript showing the exception.

If it would be proper for the Court below to make the amendment as suggested, then appellant should have a rehearing. If such amendment cannot be legally made, then no rehearing should be allowed on this ground.

Our statute, in regard to exceptions, provides in effect (we give the substance and not the words of the Act) that when an exception is taken in the progress of a trial, it shall be written out by the party excepting, or if he requires it by the clerk, and settled or corrected forthwith, or the *Judge* may note it in his minutes and afterwards settle it in a statement of the case. The correct practice is immediately to settle the exception and have it signed by the Judge forthwith; for the Judge himself to make a short minute of the same, and afterwards have it drawn up in regular form and signed during the term at which the case is tried; or else for the appellant to make his statement on motion for new trial, or on appeal, as the case may be, and have it settled within the time and in the manner prescribed by law. If the clerk should make a minute of the exception under the direction of the Court, doubtless

it would answer the same purpose as if the Judge made it. But certainly a Judge is more capable than a clerk to note the exact point of the exception and make such memorandum as will, after the trial is over, enable him to settle the bill correctly. If there is an entire failure to make any note of an exception taken, either by the Judge or his clerk, and the term of Court expires at which the case was tried and judgment rendered, we do not see by what authority the Judge could afterwards settle or make a bill of exceptions showing the fact. He might settle a statement even after the term if made within the time prescribed by law. The general rule is that after judgment and the expiration of the term, the Court loses jurisdiction of the case for most purposes. It may correct its judgment in all matters of clerical mistake, and in some other particular matters, even after the expiration of the term; but such corrections depend not on the memory of the Judge, but on some written evidence or memorial connected with the case. It is not thought best to trust to the recollection of the Judge in such cases.

Counsel for petitioner seems to have examined the authorities in regard to amendments of records, and settling bills of exception. He has found none, or at least we have found none in the various authorities referred to, where a bill of exception has been sustained that was settled by the Judge who tried the cause, after the expiration of the term at which the judgment was rendered, upon his simple memory of what occurred at the trial, and when no note or memorandum was made at the time of the exception. Nor do we find a single case in which it has been held that a Judge, after the expiration of a term at which final judgment has been rendered, could, on his simple recollection of what had occurred at the trial, amend the record so as to cure any fatal defect therein. Such amendments may be made before final judgment, or before the end of the term at which final judgment is rendered. They may be made after judgment, and after the expiration of the judgment term, if there is anything to amend by. So too, if the record is mutilated after judgment, the Court may restore it to its former condition. Upon all these points the diligence of counsel has found authorities, but they do not conflict with the views above expressed by this Court, in regard to amendments of the record.

Under our code there is no necessity certainly for a departure from the well established practice in this respect. If an exception is actually taken at the trial, but not drawn up in form for the Judge's signature, and no note of it is made either by the Judge or clerk, still the party dissatisfied with the judgment has a right to make his statement on motion for new trial, or on appeal; and in that statement he may show any exception that he really took during the trial, although there be no note of the same. For the purpose of this statement the Court still retains jurisdiction of the case until it is finally settled, or the parties have lost their rights by some laches, although the term may have expired.

After the statement is once made and settled, we think the Court below has lost jurisdiction over the case, and no addition can be made thereto.

The remaining point on which petitioners rely for a rehearing, relates to the view taken by one member of this Court in regard to the sixth instruction, given by request of respondents. Petitioners' first proposition on this subject is, that the Indians themselves who built the old ditch and dam alluded to, in the opinion of the Court, had no right to the water, and therefore none could be transferred to a third party. The ground assumed is, that the diversion of water for the mere temporary purpose of stranding fish, is not converting it to a useful or profitable purpose, and therefore the party thus diverting it acquires no rights. Had the water been diverted by the Indians for the mere purpose of catching fish upon one occasion, this position might have been right. But as I understand the testimony, it was a permanent diversion of the water, so as to run it over flat meadows, thus enabling the Indians at any time to catch fish among the grass of the meadow-lands, which they could not catch whilst the waters were confined in a narrow channel. I cannot see but that it is just as legitimate for an Indian to turn water over meadow-lands, to enable him to catch fish for his subsistence, as for a white man to turn it over the same land to increase the growth of grass.

But it is said there is no proof that the defendants have purchased from the right Indian. There is no proof that the same Indian or Indians who built the dam and ditch sold the privilege

to respondents. That if any sale or transfer could be made, it must be made by the tribe and not by individuals, etc.

According to my ideas of the law, it makes no difference whether the right Indian, the wrong Indian, or no Indian made the transfer to respondents. The question is: Did the right to repair that old Indian ditch exist at the time it is contended by appellant that respondents did wrongfully repair the same?

If the Indians (the Indians who built the ditch and dam) had the right to repair the same, then according to my views the person who got possession of the land through which the ditch passed had the same right, even though that was acquired by a naked trespass.

To illustrate: B owns lower farm; A has the oldest location and appropriates just half the water. B appropriates only what is left after A is supplied, but would be able to appropriate all the water of the creek if A did not first use it; and whenever A fails to use it he does appropriate all. So that he has in effect a right to all the waters of the creek except in so far as the same are appropriated by A. Now whilst A is thus appropriating half the water on the creek on his farm, C, a mere naked trespasser, expels A from his farm, and so continues to use just half the water as A had previously done, without any change in the ditch or dam; yet it will hardly be contended that B would have any right of action against C. I apprehend the only party who could, under these circumstances, maintain an action against C would be A, who was ousted. Suppose again, whilst C is in possession the dam breaks away, so that all the water for a few days passes down the creek and is used by B; could B maintain an action as against C for repairing the dam? I think there is hardly a question but that any lawyer would answer this in the negative. Again: suppose the upper dam breaks away twenty-four hours before he expels A, and he upon getting possession immediately repairs the dam; is there in such case any cause of action on the part of B against C? After mature reflection, I think there would be none. And the case under consideration is, in my mind, precisely analagous to the one last supposed. If there was a right existing in any person or persons to repair that ditch, I apprehend the plaintiff had no cause of action for such repairs. It

was not a legitimate inquiry whether the repairing was done by the right man or the wrong one.

There was no trespass committed on the lands of appellant. If any act done off of his land only turned the water where of right it belonged, it might be an injury; but it was no legal damage to plaintiff—it was *damnum absque injuria.*

With respect to the position that the appellant was the first appropriator of the creek, and therefore had a right to have the water flow in its natural channel, and as a corollary the right to remove any obstructions in the channel, we think that point fully settled when this case was first before us. (See this same case, 2 Nev. 274.)

We do not feel disposed to review a decision which has gone down to the Court below and been acted on. Even if we could go into the review of a case which has been decided and acted on, we do not think that anything has been shown calculated to change our views on that point. Whilst the writer of this opinion has endeavored to express the views of the Court in regard to the first point noticed in this response, he only expressed his own views as to the second point.

On that point he stands alone in the first opinion in this case, and only intends herein to express his individual views.

Rehearing is denied.

Opinion by JOHNSON, J.

The authorities cited by Attorney-General, General Clarke, of counsel for appellant, all tend to maintain this one proposition: that Courts may, and sometimes do, permit amendments of their records after adjournment of the term in which the trial or other proceeding was had. I accept this as a proper statement of the law, although I know that the reverse rule has oftentimes prevailed in Courts of high authority with the profession; and probably a precedent of this Court shown by its rulings, at least in one case, would forbid an amendment of the character now sought to be made in the District Court records.

In *Bowers* v. *Beck et al.*, 2. Nev. 139, an amendment was made by the District Judge to a bill of exceptions allowed by him within

a few days after its allowance and the adjournment of the term, by striking out a certain statement which had no existence in point of fact ; and thereby made the bill correspond to the truth.   The case was a very striking one indeed, and one which, if Courts could ever allow an amendment after the expiration of the term, called for the exercise of that authority, as will be seen on an inspection of the reported case.

The attention of the Court was called to these facts before argument on the appeal, and the part so stricken from the bill of exceptions was restored, and upon it the case heard and determined, although one of the Judges (Beatty) intimated that perhaps under that state of facts a bill of exceptions might be corrected ; and another of the Judges (Brosnan) seemed to disapprove of the general principle that Courts, after adjournment of the term, lost jurisdiction over their orders and judgment for purposes of amendment.   But the action had therein, in refusing the amendment, I am not willing to accept as a precedent governing in similar cases, nor can I give sanction to the doctrine that Courts and Judges lose all power and jurisdiction over their orders or judgments after the expiration of the term in which they may be made and rendered, without giving full consideration and weight to the exceptions which should be made in the application of the rule.   In fact when we turn to the books, in search for the grounds upon which the rule has been maintained, we discover that in part it has no present existence, consequent upon the changes wrought in judicial systems and practice ; whilst in other particulars it is upheld by statutes and rules of Court having no application with us.   And indeed, in the long course of judicial decisions, the rule has become so far relaxed and the exceptions extended that the proposition now partakes more of the qualities of an *exception* to the general rule than the general rule itself.   Wherefore I conclude that in the matter of amendment of Court records, the question should be treated as one of *legal discretion* rather than *jurisdiction* solely ; that whilst the power is not *unlimited*, neither is it absolutely *restricted* to the particular term, but may be exercised within the bounds of a *legal discretion*, whereof the subject matter of the amendment and the circumstances under which it is allowed constitute the only test.   To

this extent probably the learned counsel and myself do not disagree, therefore let us apply these rules to the case in hand.

The statute (Sec. 188, Prac. Act) defines "an exception to be an objection taken at the trial to a decision on a matter of law * * * in the charge to the jury." "Section 189. The point of the exception shall be particularly stated, and may be delivered in writing to the Judge, or if the party require it, shall be written down by the clerk. When delivered in writing or written down by the clerk, it shall be made conformable to the truth, or be at the time corrected until it is so made conformable. When not delivered in writing or written down as above, it may be entered in the Judge's minutes, and afterward settled in a statement of the case." The affidavit and certificate filed in support of the petition shows that a certain instruction "was excepted to at the trial, that it was allowed by the Court at the time the instructions were read to the jury, and the clerk ordered to enter the same." We are not advised as to where this particular entry, ordered by the Judge, was to be made, but from the usual practice of District Courts in having their clerks keep minutes of their proceedings, we presume that the entry was intended to be in the minutes thus kept by the clerk. The fact of such exception being stated, the direction of the Court to the clerk, and his neglect to make the entry, are the grounds upon which General Clarke claims a rehearing.

But the showing thus made, the earnest and labored argument of counsel, and citation of numerous authorities, all stop short of the real point to be considered now. That is: Did the failure of the clerk to make such entry deprive the party of any substantial right, and if it had been done would the transcript on appeal necessarily have shown the exception? For if the entry had been made in the minutes, and yet could not of itself be introduced into and become a part of the record on appeal, most clearly his neglect so to do occasions no injury to appellant of which he can complain.

Admit that it was the duty of the clerk when directed by the Court to note the exception in his minutes, although the statute does not contemplate such a mode, it would not follow as a consequence that the entry would appear in the transcript; for the rule is well settled that exception cannot be shown by such entries alone.

(*Gunter* v. *Geary*, 1 Cal. 462; *Johnson et al.* v. *Sepulveda*, 5 Id. 149; *Castro's Executors* v. *Armesti*, 14 Id. 38; *People* v. *Empire G. & S. M. Co.*, [No. 1372] Supreme Court, Cal., Oct. Term, 1867.)

Although on the argument of a motion for a new trial reference may be had to such minutes, yet on appeal, where there is no formal bill of exceptions taken at the trial, it can be brought up only by means of a statement; therefore if the clerk had made the entry as directed, it would have been of no avail as to the matter in question, and equally so would have been the proposed amendment, if appearing on a reargument of the appeal. It would not help appellant's case in the least, and therefore can furnish no sufficient grounds for the application.

The same distinguished counsellor, in urging the matter of his position, complained that the decision of one of the Justices turned upon a point not denied as involved in the record, yet which was not suggested by opposing counsel on the argument.

This perhaps is true, and if the point could be available to appellant on a further hearing, might perhaps be a sufficient reason to grant his request; but with the views already expressed on the point, it could serve no beneficial purpose to allow it. And further on this point, chiefly in response to matters suggested by the other counsel for appellant. It rests with appellant to show affirmatively the error complained of in the Court below. The position of respondent is different. His relation to the appeal is purely defensive. The presumptions are all in favor of the judgment of the lower Court, and by such affirmative showing of error in its rulings or judgment, can it be successfully overthrown. If the errors complained of be wholly or in part the giving or refusing instructions, as the case might be, to which ruling appellant has excepted at the proper time, it is not enough to show such instructions were given or refused according to the facts, but furthermore that the party injured by such ruling properly excepted thereto; for it is not an error of the lower Court which can be removed here, unless such exceptions were taken. The several means by which these exceptions may be brought up has been already shown, and whilst the fact that such exceptions were stated at the trial is

asserted, it is not pretended that any of the statutory methods have been employed to bring up the evidence of such fact.

But it is insisted that respondent has waived the necessity of any showing of such fact by record evidence, in treating the case on motion for new trial as if the exception had been properly taken. Concede the law of counsel's proposition; wherein do we ascertain the fact as stated? Neither the affidavit of the one counsel or the certificate of the Judge show such fact; whilst the statement and records are equally silent in relation to any such matter, else perhaps this point of inquiry at the time would be of less moment. We cannot follow counsel outside of the record to supply evidence in aid of their law propositions.

On another point—that " the verdict and judgment are not supported by the evidence "—I see no sufficient reason to change the views expressed in my former opinion, nor do I conceive it is necessary for anything which is before us on this appeal to state my views as to the Indian title.

I concur in refusing a rehearing.